IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT W. FELLAND,

                                Plaintiff,              OPINION AND ORDER

      v.

                                                       10-cv-664-slc

PATRICK CLIFTON;
CM LA PERLA DE PEÑASCO, S. DE R.L. DE C.V.,
  a Mexican corporation; and
CLIFTON MERIDIAN LLC,

                                Defendants.

---

The subject of this removal case is a planned but never-completed seaside condominium development in Mexico known as La Perla del Mar. On June 1, 2010, plaintiff Robert Felland commenced a civil action against defendants Patrick Clifton, CM La Perla de Peñasco, S. De R.L. De C.V. and Clifton Meridian LLC in the Circuit Court for Oneida County, Wisconsin, seeking rescission of the contract, which he alleges defendants fraudulently induced him to sign for the construction and purchase of a condo, and the return of his down payments. Dkt. 1, Exh. 2. On November 1, 2010, defendants removed the case to this court pursuant 9 U.S.C. § 205, which grants federal subject matter jurisdiction over international agreements arising under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq.*, and the Inter-American Convention on International Commercial Arbitration, 9 U.S.C. § 301 *et seq.* Dkt. 1. On defendants' motion, I dismissed the case for lack of personal jurisdiction, dkt. 44, but the Court of Appeals for the Seventh Circuit reversed and remanded. *See Felland v. Clifton*, 682 F.3d 665 (7th Cir. 2012).

Currently before the court are: (1) defendants' motion to dismiss for improper venue and allow the parties to arbitrate the dispute pursuant to the contract, dkt. 63; and (2) Felland's amended motion to remand to state court for lack of subject matter jurisdiction and alternative

motion to order arbitration to take place in the United States, dkt. 67. Defendants also ask the court to dismiss this case, arguing that all of Felland's claims are subject to arbitration.

Because I find that the parties' arbitration agreement is enforceable under the Convention and encompasses Felland's claims of intentional misrepresentation and rescission, the parties must arbitrate their dispute as required by their contract. The agreement, however, is silent with respect to the location of the arbitration. Therefore, pursuant to 9 U.S.C. §§ 4, 206 and 208, I am ordering the arbitration to take place in the Western District of Wisconsin. Finally, given the unique circumstances in this case, I am retaining jurisdiction and staying this action pending arbitration.

According to the Court of Appeals for the Seventh Circuit, "a motion to dismiss based on a contractual arbitration clause is appropriately 'conceptualized as an objection to venue, and hence properly raised under Rule 12(b)(3).'" *Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801, 807-08 (7th Cir. 2011). When considering a Rule 12(b)(3) motion, the court must accept Felland's version of events as true but may consider evidence submitted by the parties outside the pleadings without converting the motion to one for summary judgment. *Faulkenberg*, 637 F.3d at 806 and 809-10. Therefore, from the complaint and the documents submitted by the parties in connection with the pending motions, I draw the following facts, solely for the purpose of deciding the motions:

ALLEGATIONS OF FACT

Plaintiff Robert Felland is a resident of Three Lakes, Wisconsin in Oneida County. Defendant Patrick Clifton is a resident of Scottsdale, Arizona who owns and controls both defendant Clifton Meridian LLC, which is organized under Arizona law, as well as defendant CM La Perla de Peñasco, S. De R.L. De C.V. ("CM la Perla"), a corporation organized under the laws of Mexico.  Defendant Clifton Meridian is a real estate development firm based in Scottsdale that specializes in building upscale beachfront residential projects located primarily in Northern Mexico.

In 2005, Clifton and Clifton Meridian began a luxury high rise condominium project named "La Perla del Mar" (the "Project") in the beachfront community of Puerto Peñasco, Mexico, about 30 miles from the Arizona border.  Clifton had formed CM La Perla to serve as the owner of the property on which the Project was to be constructed and to facilitate the sale of condominium units.  CM La Perla maintained a sales office for the Project in Puerto Peñasco, where it employed sales representatives employed by or affiliated with Clifton Meridian.

On February 23, 2006, while vacationing in Arizona, Felland and his wife, Linda Felland, made an excursion to Puerto Peñasco to tour the Project's model unit.  During their visit, the Fellands met with defendants' sales representative, Jon Puckett.  During the sales presentation, the Fellands were told that construction of the Project was to start in a few weeks and would be completed no later than early 2008.  Puckett also gave them a lengthy, full-color brochure for the project, which included conceptual renderings of the completed building, floor plans, and a description of the building amenities.  The back of each page of the brochure states: "A Clifton Meridian Community."

Relying on defendants' representations, and while still on site in Puerto Peñasco, Felland signed a "Reservation of Unit" form and paid a refundable $5,000 deposit. The form identifies Patrick Clifton as the representative and manager of CM La Perla. Under the terms of the Reservation of Unit form, a buyer wishing to finalize the purchase of the unit had to sign a type of contract under the laws of Mexico called a Promise of Trust Agreement (PTA).

On March 9, 2006, Felland signed the PTA, which stated that the Project "will be built" and that CM La Perla "commits to deliver" Felland's condominium "no later than January 31, 2009." It also contained the following provision:

> FOURTEENTH.- <u>GOVERNING LAW, AND JURISDICTION</u>:
>
> In case of any conflict or controversy that may arise as regards the interpretation or compliance hereof, the parties irrevocably subject themselves, on first instance to an arbitration process in accordance to the applicable laws and/or the jurisdiction of the competent courts of the city of Hermosillo, Sonora, United Mexican States, as chosen by the FUTURE TRUSTOR, expressly waiving any present or future jurisdiction or venue that could correspond to them due to their domiciles or any other cause.

PTA art. Fourteenth, at p. 16.

Felland avers that he agreed to the arbitration clause in the PTA because he did not believe that a dispute with defendants was likely. According to Felland, he held this belief because of the type of representations that the defendants made in the promotional literature and the PTA. Specifically, the promotional literature stated that "[d]eveloper financing currently offered is no-qualifying, 30% down, 15 years @ 10.5%." The PTA also discussed developer financing, stating that:

> The balance of the Purchase Price, US $476,000.00 seventy percent (70%), shall be paid as follows:
>
> a)   One payment of $476,000.00, in any form other than Developer financing option, made at the Delivery Date of the UNIT qualifying it for a 5% discount off the total sales price of the unit, or
>
> b)   By execution of a non-qualifying promissory note of One hundred and eighty (180) successive monthly payments of US $5,262.00 calculated at interest rate of 10.5% (ten and one half percent) and amortized over a term of fifteen (15) years.

Felland understood these representations to mean that the defendants had the financial wherewithal to fund 70% of the project on their own.  By committing to fund 70% of a multi-million dollar project, Felland believed that defendants had put substantial "skin in the game."  No one told the Fellands that defendants had not secured construction financing or that the initiation of construction was contingent upon the sale of additional units.

The purchase price for Felland's unit was $680,000.  The PTA required a 30% down-payment (totaling $204,000), payable in three installments of $68,000 over 90 days.  Having already paid $5,000 when he signed the Reservation of Unit form, Felland tendered a check for an additional $63,000 when he signed the PTA.  Felland was told that a fully executed copy of the PTA would be mailed to him once it had been signed by Patrick Clifton on behalf of CM la Perla.  Felland received the fully executed PTA in an envelope postmarked April 10, 2006.  He subsequently paid two more installments of $68,000 of the down payment, for a total of $204,000.

Although various updates sent by defendants caused Felland to believe that the project was proceeding as planned, defendants failed to deliver the condominium by January 31, 2009.

On February 10, 2009, defendant Patrick Clifton sent an e-mail to all of the owners, stating in part:

> Unfortunately I must be very clear about the following: if anyone, I don't care who they are, engages in any activities to deliberately sabotage our financing attempts by organizing some type of legal action against the project or spread malicious and false lies about the project or developer I will assure you that we will take immediate and punitive legal action against the party or parties at fault.

After receiving this e-mail, the Fellands contacted an attorney, who on February 18, 2009, demanded that defendants refund the Fellands' down payment. Defendants refused. On April 9, 2009, Felland's attorney requested copies of any construction financing agreements or commitments in place at the time Felland paid the $204,000 in 2006. In a telephone call shortly thereafter, defendants' attorney stated that there were no construction finance agreements or commitments. Similarly, in an e-mail dated April 29, 2009, defendants' attorney stated that there was no "funding when your client signed on" and that "advance sales were funding the undertaking of the project." Construction of the Project has not advanced beyond the limited and preliminary work performed in 2007 and 2008.[1]

On June 1, 2010, Felland filed suit in the Circuit Court for Oneida County, Wisconsin, asserting claims for intentional misrepresentation and rescission of the contract. Defendants removed the case to this court on November 1, 2010.

---

[1] For an overview of the condominium development situation in Puerto Peñasco, *see* Rosenblum, "Unfinished Business: Rocky Point's natural beauty invaded by sea of speculative, abandoned condos," **Inside Tucson Business** (January 27, 2012). This article has no bearing on the instant case and the court has not used it in any manner to reach its decision, but it provides background context for the instant dispute.

6

OPINION

Defendants' petition for removal in this case is based on the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201-08, and the Inter-American Convention on International Commercial Arbitration, 9 U.S.C. §§ 301-07, (collectively referred to as the "Convention").[2] *See* dkt. 1. The Convention is a "multi-lateral treaty that requires courts of a nation state to give effect to private agreements to arbitrate and to enforce arbitration awards made in other contracting states." *Thomas v. Carnival Corp.*, 573 F.3d 1113, 1116 (11th Cir. 2009). The United States, as a signatory to the Convention, enforces the Convention through the Federal Arbitration Act (FAA), 9 U.S.C. § 201, et seq. *See Skipper Marine*, 2013 WL 1414950 at *1; *Ruiz v. Carnival Corp.*, 754 F. Supp. 2d 1328, 1330 (S.D. Fla. 2010). United States district courts have subject matter jurisdiction over any "action or proceeding falling under the Convention," 9 U.S.C. § 203, and a defendant may remove a case brought in state court "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention," *id.* § 205.

A federal court with jurisdiction "may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." *Id.* § 206. Federal courts deciding whether to order arbitration pursuant to the

---

[2] The Governing Law and Jurisdiction clause in the PTA refers to Mexican law but it is unclear whether the parties intended it as a choice of law provision applicable to the enforceability of the arbitration clause. Neither party has asked me to apply Mexican law and both frame their debate over enforceability entirely as a dispute about U.S. law. Therefore, I will apply U.S. federal law and consider any argument to the contrary to be waived. *Adams v. Raintree Vacation Exchange, LLC*, 702 F.3d 436, 438 (7th Cir. 2012) (finding same with forum selection clause in contracts to purchase timeshare interests in Mexican resort) (internal citations omitted); *Skipper Marine Holding Inc. v. Azimut Benetti S.p.A.*, 2013 WL 1414950, *3 (E.D. Wis. Apr. 4, 2013) (citing *Adams* for same in removal case where Convention applied). *See also Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 500 F.3d 571, 575 (7th Cir. 2007) (applying federal common law because agreement silent as to choice of law).

Convention perform a limited inquiry into whether an arbitration agreement exists and is covered by the Convention. *See Certain Underwriters at Lloyd's, London v. Simon,* 2007 WL 3047128, *5 (S.D. Ind. Oct. 18, 2007) (citing *DiMercurio v. Sphere Drake Ins., PLC*, 202 F.3d 71, 74 (1st Cir. 2000)).

The Convention generally governs any "arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial." 9 U.S.C. § 202. A district court must enforce an agreement to arbitrate under the Convention when the following jurisdictional requirements are met: (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration within the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or the commercial relationship has some reasonable relation with one or more foreign states. *Bautista v. Star Cruises*, 396 F.3d 1289, 1295 n. 7. (11th Cir. 2005) (citations omitted).

Even if these jurisdictional requirements are met, removal is improper if affirmative defenses such as "fraud, mistake, duress, and waiver" render the arbitration agreement "null and void." *Id.* at 1301. *See also* Convention, art. II(3); *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 449 (3rd Cir. 2003); *Ledeev. Ceramiche Ragno*, 684 F.2d 184, 186 (1st Cir. 1982)); *Rual Trade Ltd. v. Viva Trade LLC*, 549 F. Supp. 2d 1067, 1080 (E.D. Wis. Apr 28, 2008).

Because it is undisputed that the PTA is a written agreement for the sale of property in Mexico between an American citizen and a Mexican corporation that provides for arbitration at the request of defendants, defendants ask that this court compel arbitration in Mexico pursuant to the parties' agreement. Although Felland does not dispute that the Convention's

jurisdictional requirements are met, he challenges subject matter jurisdiction on the grounds that

the arbitration clause:

> (1)  is null and void because it was procured by fraud;
>
> (2)  is unenforceable as unconscionable because it is not mutual; and
>
> (3)  does not encompass his claims for intentional misrepresentation
>       and rescission.

In the event the court disagrees, Felland asserts that the arbitration clause does not provide for

arbitration in Mexico and therefore should be ordered in the United States.

I address each of Felland's arguments in turn:


## I.  Fraud

Felland contends that the arbitration clause is null and void because it was procured by

fraud.  As defendants point out, fraud as a defense to enforcement of an arbitration agreement

is limited to fraud in the making of the arbitration agreement itself, not fraud in the inducement

of the contract as a whole.  *Rent-A-Center, West, Inc. v. Jackson*, ___ U.S. ___, 130 S.Ct. 2772,

2778-79 (2010) (requiring basis of challenge to be directed specifically to agreement to arbitrate

for court to intervene); *Prima Paint Corporation v. Flood* & *Conklin Mfg. Co.*, 388 U.S. 395, 403-04

(1967) (FAA does not permit court to consider claims of fraudulent inducement of the overall

contract); *Adams v. Raintree Vacation Exchange, LLC*, 702 F.3d 436, 443 (7th Cir. 2012) ("even

if the contracts of sale [for Mexican timeshares] to the plaintiffs that contain the clause are

fraudulent, it doesn't follow that the clause is")[3]; *Faulkenberg*, 637 F.3d at 811 ("The only

---

[3]  Although Felland argues that *Adams* is distinguishable because it involved a forum selection
clause and not an arbitration clause, the court of appeals relied on several arbitration cases and specifically
noted that the two types of clauses are analogous.  *Id.* at 440-41; *see also Vimar Seguros y Reaseguros, S.A.
v. M/V Sky Reefer*, 515 U.S. 528, 534 (1995) (arbitration clauses "are but a subset" of forum selection
clauses).

relevant inquiry at this stage is whether the arbitration clause itself was fraudulently induced . . .").  As the Supreme Court explained in *Rent-A-Center,* "where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract—we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene."  130 S. Ct. at 2778 (citing *Prima Paint*, 388 U.S. at 403-04).

Therefore, for Felland to succeed in persuading this court to consider the issue of fraud, Felland must allege fraud uniquely related to the arbitration clause in the agreement; it does not suffice for him to allege fraud in the inducement of the contract as a whole.  *See Faulkenberg*, 637 F.3d at 811 ("plaintiffs cannot get out from under the arbitration clause simply by alleging the entire contract was a product of fraud"); *James v. McDonald's Corp.*, 417 F.3d 672, 680 (7ᵗʰ Cir. 2005) (rejecting plaintiff's attempts to invalidate arbitration clause by showing that clause was part of defendant's alleged scheme to defraud).

Here, there is no evidence in the record that the parties specifically negotiated or even independently considered the arbitration clause apart from the sales contract as a whole.  Similarly, Felland has not alleged that the arbitration clause was illegible, inscrutable, or that defendants otherwise tried to mislead him as to its meaning.  *Adams*, 702 F.3d at 443 (finding same where forum selection clause not "unclear, in illegible print, in Sanskrit or hieroglyphics").  Instead, Felland avers that he never would have agreed to the arbitration clause had defendants not led him to believe that they had the financial wherewithal to fund 70% of the entire project.  Felland claims that he based this belief on defendants' offer of developer financing that was "currently available" to underwrite 70% of the purchase price.  In truth, alleges Felland,

defendants had not secured funding for the project and continued to lull purchasers with a series of untrue communications about how the project was proceeding as planned.

Although Felland attempts to cast his allegations of fraud as related solely to the arbitration agreement, these same allegations evidence fraud in the sale of the condominium. In fact, in support of his misrepresentation claim in his original state-court complaint, Felland alleges that defendants knew at the time but failed to disclose that:

> (a) They did not have sources of financing for the construction of the condominium project.
>
> (b) The only contemplated source of financing for the construction project would be the down-payments received from the sale of additional condominium suites. . . .

Dkt. 1, Exh. at ¶ 3.

As defendants note, it is not plausible that if Felland had known the truth about defendants' financing, he would have signed the PTA but refused to sign the arbitration provision.  Felland admits as much in his affidavit, in which he states that "[w]ere it not for the representation that the defendants could fund 70% of the project, I would not have agreed to the arbitration provision, or, indeed, to the PTA as a whole."  Dkt. 69 at ¶12.  To the same effect, Felland's allegation that defendants lied about their financial health challenge the contract as a whole, not merely the arbitration clause.

As a result, this issue must be resolved by an arbitrator, and not by this court, in accordance with *Prima Paint*.  *See Nanosolutions, LLC v. Prajza*, 793 F. Supp. 2d 46, 55 (D.D.C. 2011) (finding same where defendants' allegedly false statements related to parties' expectations for their business relationship and not to dispute resolution mechanism).

11

## II. Mutuality

Felland contends that the arbitration clause lacks mutuality by giving CM La Perla but not Felland the ability to choose between arbitration and litigation.[4]  As a result, argues Felland, the clause is unconscionable, and therefore unenforceable.  Felland relies on Wisconsin state law and a Seventh Circuit case applying Indiana State law.  *See Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753 (7th Cir. 2001); *Wis. Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶ 32, 290 Wis. 2d 514, 714 N.W.2d 155 (Wis. 2006).

In an initial argument, defendants assert that state law does not apply in this case because the arbitration clause in the PTA refers solely to Mexican law, which Felland has not asked the court to apply.  Accordingly, defendants advocate the application of federal common law.  In response, Felland appears to abandon his arguments related to state law and generally asserts that unconscionability is a standard breach of contract defense that applies to arbitration clauses under federal law.  *See* dkt. 74 at 9-10.  Although the *Jones* case cited by Felland offers some arguable support under Wisconsin law for finding a one-sided arbitration provision unconscionable (if other factors are present, *see* 290 Wis. 2d at 533-34), Felland has failed to develop *that* argument with any meaningful discussion of the law or facts and has not shown why

---

[4]  The clause is poorly worded and confusing, providing that:

> The parties irrevocably subject themselves, on first instance to an arbitration process in accordance to the applicable laws and/or the jurisdiction of the competent courts of the city of Hermosillo, Sonora, United Mexican States, as chosen by the FUTURE TRUSTOR.

Both parties assume without explanation that the clause means that CM La Perla, as the future trustor, has a choice between arbitration and litigation.  In my reading, the provision clearly requires arbitration in the first instance, then appears to intend to allow the future trustor to choose something else—possibly a competent court in Hermosillo?  In any event, because the parties have not raised this as an issue, I will assume, as they do, that the clause allows only CM La Perla to choose whether to arbitrate or litigate.

state law should apply in the first place.  *See Green Tree Financial Corp.- Alabama v. Randolph*, 531 U.S. 79, 91 (2000) (as the party resisting arbitration, plaintiff bears the burden of establishing that the arbitration clause is unconscionable).  Accordingly, I will consider the state law argument waived.  *Jordan v. Binns*, 712 F.3d 1123, 1134 (7th Cir. 2013) (undeveloped arguments are considered waived).

Next, as defendants note, federal courts addressing the issue have held that the Convention's "null and void" clause allows a court to invalidate an arbitration clause only in situations that can be applied neutrally on an international scale (*e.g.,* fraud, mistake, duress or waiver).  *Bautista*, 396 F.3d at 1302; *DiMercurio v. Sphere Drake Ins. PLC*, 202 F.3d 71, 79 (1st Cir. 2000); *Khan v. Parsons Global Services, Ltd.*, 480 F. Supp. 2d 327 (D.D.C. 2007), *rev'd on other grounds*, 521 F.3d 421 (D.C. Cir. 2008); *Apple & Eve, LLC v. Yantai N. Andre Juice Co.*, 610 F. Supp. 2d 226, 228 (E.D.N.Y. 2009); *Goshawk Dedicated v. Portsmouth Settlement Co. I*, 466 F. Supp. 2d 1293, 1305 (N.D. Ga. 2006).  Pursuant to this gloss of the "null and void" clause, courts have declined to apply state-law principles of unconscionability to arbitration agreements subject to the Convention.  *Id.*  This is a logical conclusion and I find that it applies here: because the contract is governed by the Convention, Felland cannot attack the arbitrability clause on the ground of unconscionability.  That being so, even if unconscionability were to be a defense under the Convention, Felland has failed to establish it in this case.

Felland bases his unconscionability argument on a claimed violation of the doctrine of mutuality, which posits that a contract must be based on an exchange of reciprocal promises.  *Harris v. Green Tree Financial Corp.*, 183 F.3d 173, 180 (3rd Cir. 1999).  Modern contract law has largely dispensed with mutuality as a requirement as long as the underlying contract is supported by consideration.  Restatement (Second) of Contracts § 79 (1981); *Hawkins v. Aid Ass'n for*

*Lutherans*, 338 F.3d 801, 806-07 (7th Cir. 2003); *Harris*, 183 F.3d at 180.  Most federal courts considering the issue in the context of arbitration agreements do not require such agreements to contain identical obligations.  *See Oblix, Inc. v. Winiecki*, 374 F.3d 488, 491 (7th Cir. 2004) (fact that employee but not employer agreed to arbitrate all claims was irrelevant because employee's salary provided consideration for arbitration clause); *Hawkins*, 338 F.3d at 806-07 (applying Wisconsin law and finding that clause requiring one party to arbitrate while giving the other a choice is not unconscionable for lack of mutuality of obligation so long as the contract is supported by consideration); *Harris*, 183 F.3d at 180 (arbitration clause allowing mortgage lender to litigate disputes but requiring borrowers to arbitrate not unconscionable); *Doctor's Associates, Inc. v. Distajo*, 66 F.3d 438, 451–53 (2nd Cir. 1995) (mutuality of obligation or remedy not required to enforce arbitration agreement if underlying contract is supported by consideration); *Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp.*, 878 F.2d 167, 168–69 (6th Cir. 1989) (rejecting claim that arbitration clause is independent contract that requires separate consideration to be enforceable); *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39, 47 (3rd Cir. 1978) (clause giving one party option to litigate or arbitrate and another only option to arbitrate not unenforceable).  Against this jurisprudential backdrop, there is no basis for this court to find that any asymmetry in the parties' arbitration clause renders it unconscionable

## III.  Arbitrability of Claims

By its terms, the parties' arbitration clause applies to "any conflict or controversy that may arise as regards the interpretation or compliance hereof."  Felland argues that his state claims for intentional misrepresentation and rescission do not "regard" the meaning of the PTA or defendants' breach of the PTA.  Defendants, on the other hand, argue that the agreement is broad enough to encompass Felland's tort claims because both claims ultimately relate to defendants' failure to perform under the contract.

The Supreme Court has held that

> where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage.'

*AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986) (quoting *Gateway Coal Co. v. United Mine Workers of America*, 414 U.S. 368, 377-378 (1974); *United Steelworkers of America v. Warrior & Gulf*, 363 U.S. 574, 582-583 (1960)).  This presumption is particularly applicable where the clause is broad.

The Seventh Circuit has held that arbitration clauses that apply to disputes "arising out of" the agreement or contract reaches all disputes having their origin in or genesis in the contract, including fraud and rescission.  *Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1033 (7th Cir. 2012); *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Intern., Ltd.*, 1 F.3d 639, 643 (7th Cir. 1993).  Depending on how one parses "arising out of" the contract (*Gore*'s contract language) versus "arising as regards the interpretation or compliance" with the contract (our

contract language), one might venture to argue that the arbitration clause in this case does not reach as far as that parsed in *Gore*. But courts have found similar language in challenged arbitration clauses to be broadly encompassing. *See, e.g., AT&T*, 475 U.S. at 650 (arbitration clause has broad reach where it applies to "differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder"); *Int'l Union of Operating Eng'rs, Local Union 103 v. Indiana Constr. Corp.*, 13 F.3d 253, 254 and 257 (7th Cir . 1994) (arbitration clause reaches broadly where it applies to "any dispute . . . concerning the interpretation or application of the terms of this contract," plus a specific exclusion for jurisdictional disputes); *Sweet Dreams*, 1 F.3d at 643 (in light of the heavy presumption in favor of arbitration, the parties must take steps to narrow phrases such as "arising out of," "arising under" and "arising out of or relating to," if they wish to limit their reach); *Certified Grocers of Illinois, Inc. v. Produce Union Local 703*, 816 F.2d 329, 329–30 (7th Cir. 1987) (finding arbitration clause broad where applied to "any difference . . . between the Employer and the Union concerning any interpretation or application of any of the provisions of this Agreement"). It comes down to this:

> Whether a particular claim is arbitrable depends not upon the characterization of the claim, but upon the relationship of the claim to the subject matter of the arbitration clause. Were the rule otherwise, a party could frustrate any agreement to arbitrate simply by the manner in which it framed its claims.

> *Gore*, 666 F.3d at 1036 (quoting *In re Oil Spill by the "Amoco Cadiz" Off the Coast of France March 16, 1978*, 659 F.2d 789, 794 (7th Cir. 1981)).

So it is here. In order to escape the reach of the arbitration clause in his contract, Felland attempts to distinguish his claims of misrepresentation and rescission from standard breach of contract claims that require an analysis of the parties' obligations under the contract, arguing that what matters is not the fact that defendants failed to deliver the promised condominium,

16

but the fact that defendants misrepresented their ability to do so at all.  Felland also argues that neither of his claims implicate the legal relationship defined in the PTA—that of future trustee and future beneficiary—because he does not seek to enforce his rights as a beneficiary.  *See* Plf's Reply Br., dkt. 76 at 13 (citing *Vedachalam v. Tata Am. Int'l Corp.*, 477 F. Supp. 2d 1080, 1087 (N.D. Cal. 2007) (finding that arbitration clause in training agreement between company, employee and his father that had expired did not encompass employee's later wage and hour claims)).  Felland's proffered distinctions are unavailing.

Felland's allegations of fraud are intertwined with and result from the contract itself.  Felland cannot maintain his action without reference to the underlying contract, and he relies directly upon his legal relationship with the defendants, which was created by the contract.  For example, in his complaint, Felland alleges that the defendants made misrepresentations about their financial stability and their construction schedule prior to Felland signing the PTA, in the language of the PTA itself and throughout the contract period.  *See* Compl., dkt. 1.  According to Felland, these misrepresentations induced him to enter into the contract and to continue to make payments under it.  *Id.*  Felland does not allege that the entire project was a sham designed to gull and pluck affluent snowbirds, having no genuine intent to build a tower; rather, Felland alleges that he was tricked into buying an unbuilt unit by false statements about project financing and the construction schedule.  In other words, if the defendants had completed La Parela del Mar and timely provided Felland with his condominium, then there would have been no actionable misrepresentation, and there is no indication that Felland would be seeking to rescind the sales contract.

17

Thus, even though Felland's claims do not explicitly raise the issue of contract interpretation or compliance, they have their "genesis in the agreement" and necessarily require the adjudicator to interpret the agreement and assess CM La Perla's compliance with it. *See Gore*, 666 F.3d at 1036 (finding similar); *Wellborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 641 (7th Cir. 2002) ("An allegation of fraud in making or inducing an agreement clearly 'relates to' that agreement and can be encompassed by a broad arbitration clause."); *Sweet Dreams*, 1 F.3d at 643 (action to nullify contract on ground of fraudulent inducement fell within arbitration clause in that very contract).

The Seventh Circuit has rejected similar attempts to avoid the reach of an arbitration clause with clever crafting of a cause of action. *See Adams*, 702 F.3d at 444 (because "the [forum selection] clause applies to any 'controversy on the interpretation and compliance with the rights and obligations of' the contracts of sale, it is broad enough to encompass tort suits that arise out of the contract); *Sweet Dreams*, 1 F.3d at 643 ("We have routinely held that a party may not avoid a contractual arbitration clause merely by 'casting its complaint in tort.'"). Given the federal presumption in favor of arbitration, I conclude that Felland's claims of misrepresentation and rescission are related to the subject matter of the arbitration clause and subject to arbitration under it.

## IV.  Location of Arbitration

The parties hotly contest where the arbitration should take place and what law governs the arbitration process.  At the center of their dispute is the PTA's poorly worded and often confusing "Governing Law and Jurisdiction" clause, which provides that the arbitration process

18

will be "in accordance to the applicable laws and/or the jurisdiction of the competent courts of the city of Hermosillo, Sonora, United Mexican States, as chosen by the FUTURE TRUSTOR." Although this provision discusses choice of law for the arbitration process,[5] it does not specify where the arbitration should take place or how an arbitrator should be chosen.

Relying on a 1995 article in the Texas International Law Journal, defendants argue that Article 1436 of the Mexican Commercial Code allows the parties to set the place of arbitration, or if they cannot agree, leaves the task to the arbitrators. Dkt. 64 at 21 (citing Siqueiros, *Mexican Arbitration-The New Statute*, 30 Tex. Int'l L. J. 227 (1995)). Defendants also assert, without authority, that under Mexican law, "the competent court" appoints the arbitrator.

However, as Felland points out, there is a difference between the federal commercial code and the laws of the Mexican State of Sonora. The Siqueiros article cited by defendants indicates that the commercial code applies only to certain types of arbitration, whereas individual Mexican state civil codes applies to other types. *Arbitration*, 30 Tex. Int'l L. J. at 229. Neither side has clarified how this court is to interpret Mexican law, nor have they attempted to argue why federal Mexican law should apply rather than the Sonora civil code. Defendants' vague reference to an 18-year old law review article does not suffice to allow the court to discern the intended location of the arbitration from an arbitration clause that is at best ambiguous on the matter.

Citing *Jain v. Mere*, 51 F.3d 686, 690 (7th Cir. 1995) and 9 U.S.C. §§ 4 and 208, Felland contends that when a contract fails to specify the location of an arbitration, the FAA directs the court to order proceedings in the district in which it sits. He also argues that because the clause

---

[5] Because choice of law with respect to the arbitration process is a matter for the arbitrator to decide in the first instance, I am not addressing the parties' arguments related to that issue. *See Vimar*, 515 U.S. at 541.

is ambiguous, the court should construe it against defendants and order arbitration in the U.S., where all of the witnesses are located and where it is safer for all concerned.  I agree with Felland that the Seventh Circuit's decision in *Jain* is instructive in this case.

*Jain* involved an arbitration agreement between two foreign nationals that failed to specify a location for the arbitration or a method of choosing arbitrators.  Similarly to this case, the arbitration clause provided that "[a]ny disagreement arising out of this contract may only be presented to an arbitrary commission applying French laws." *Jain*, 51 F.3d at 688.  The court of appeals did not look to French law to determine how to choose a location or arbitrator, concluding that the fact "[t]hat French law will govern the arbitration between de Méré and Jain does not dictate what site for arbitration to choose or how an arbitrator should be selected." *Id.* at 689 n.1.  *Cf. Matter of U.S. Lines, Inc. and Liverpool and London S.S. Protection and Indem. Ass'n, Ltd.*, 833 F. Supp. 350 (S.D.N.Y. 1993) (finding that the agreement did provide for selection of arbitrator where contract stated that if parties could not agree to an arbitrator, the President of the Law Society of England would designate one).

Following the lead of several other federal courts, the court in *Jain* held that when an arbitration agreement does not identify where the arbitration should be located, 9 U.S.C. § 4 supplements § 206 by requiring the district court to compel arbitration in its own district.  *Id.* at 690-91 (citing *Bauhinia Corp. v. China Nat. Machinery & Equipment Import & Export Corp.*, 819 F.2d 247, 249-50 (9th Cir. 1987); *Circus Productions, Inc. v. Rosgoscirc*, 1993 WL 403993 (S.D.N.Y. Oct. 5, 1993); *Tolaram Fibers, Inc., v. Deutsche Engineering der Voest-Alpine Industrieanlagenbau, GmbH*, 1991 WL 41772 (M.D.N.C. Feb. 26, 1991); *Capitol Converting Co. v. Curioni*, 1989 WL 152832 (N.D. Ill. Nov. 9, 1989); *Oil Basins Ltd. v. Broken Hill Proprietary Co.*, 613 F.Supp. 483 (S.D.N.Y. 1985)).

Given that the arbitration clause in the PTA does not specify a location for the arbitration, I must direct that it occur within the Western District of Wisconsin.  I also note that upon the request of a party, 9 U.S.C. § 5 allows the court to appoint an arbitrator if the agreement does not provide a method for selecting one.  *Jain*, 51 F.3d at 692.  Because neither party has requested such an appointment, I will not make one at this time.

## V. Dismiss or Stay

The remaining issue is whether this court should dismiss or stay this action.  The Seventh Circuit has stated a preference that cases are stayed pending arbitration rather than dismissed completely.  *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7ᵗʰ Cir. 2008).  As defendants point out, however, there is a growing trend among federal courts, in this and other circuits, favoring dismissal of a case when all of the claims are subject to arbitration.  *See Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769–70 (8ᵗʰ Cir. 2011); *Johnson v. Orkin, LLC*, ___ F. Supp. 2d ___, 2013 WL 828506, *15 (N.D. Ill. March 06, 2013) (collecting cases); *Bryant v. Fulgham*, 2012 WL 1802150, *3 (N.D. Ill. May 17, 2012) (dismissal appropriate because all claims subject to arbitration, leaving nothing for court to decide unless party seeks confirmation or challenges award); *Waldbillig v. SSC Germantown Operating Co.*, 2010 WL 1688535, *9–11 (E.D. Wis. Apr. 26, 2010) (collecting cases).  Even though the Seventh Circuit has not addressed the issue directly, it has affirmed such dismissals by district courts.  *See, e.g.*, *Baumann v. Finish Line, Inc.*, 421 F. App'x 632, 636 (7ᵗʰ Cir. 2011); *Am. Int'l Specialty Lines Ins. Co. v. Elec. Data Sys. Corp.*, 347 F.3d 665, 668 (7ᵗʰ Cir. 2003); *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 679 (7ᵗʰ Cir. 2002).

Although I have the discretion to dismiss this case because all of Felland's claims are subject to arbitration, I am declining to do so.  Not only does this court have both subject matter and personal jurisdiction in this case, but it was required to set the location of the arbitration and may be called upon to select an arbitrator in the future.  The parties' relationship has been contentious, increasing the likelihood that they may again ask this court to intervene and referee.  Accordingly, I find the more prudent course in this particular case is to retain jurisdiction and stay this action pending arbitration.

## ORDER

IT IS ORDERED that:

(1)     The motion to dismiss for improper venue (dkt. 63) filed by defendants Patrick Clifton, CM La Perla de Peñasco, S. De R.L. De C.V. and Clifton Meridian LLC is GRANTED to the extent that the parties are ordered to proceed promptly with arbitration of Felland's claims in accordance with their agreement and this order.  The motion is DENIED in all other respects.

(2)     Plaintiff Robert Felland's amended motion to remand (dkt. 67) is DENIED and his alternative motion for arbitration to take place in the United States (dkt. 67) is GRANTED.  Pursuant to 9 U.S.C. §§ 4, 206 and 208, the arbitration shall take place in the Western District of Wisconsin in the United States.

(3)     Unless the parties agree to a different date, they shall select an arbitrator by August 30, 2013.

(4)     This action is STAYED pending arbitration.

Entered this 18th day of July, 2013.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge